168 So. 885

**JOINER et ux. v. STATE.**

**5 Div. 209.**

Supreme Court of Alabama.

June 11, 1936.

Pruet & Glass, of Ashland, for appellants.

A. A. Carmichael, Atty. Gen., and Wm. H. Loeb, Asst. Atty. Gen., for the State.

KNIGHT, Justice.

Bill to abate a liquor nuisance, filed under the provisions of section 4671 et seq. and related sections 9290 and 9291 of the Code.

In our recent case of Ex parte Hill, 229 Ala. 501, 158 So. 531, it was held that the padlock provisions of section 9290 and the bond authorized by section 9291 of the Code are within the "general broad terms" of those applicable to liquor nuisances.

Section 4675 of the Code provides: "The owner of and all persons interested in the building or premises where the nuisance exists, or any agent renting the same, as well as the keeper thereof, may be joined with the keeper as parties defendant to the proceedings, and all such owners, keepers, parties interested or agents who may be found to have knowingly assented to the keeping or maintaining of such nuisance on the premises at any time within six months prior to the commencement of the suit, and their servants, lessees, and tenants shall be perpetually enjoined from maintaining and keeping, or suffering to be kept and maintained such nuisance, or any liquor nuisance, upon the said premises."

By section 4676 of the Code is also provided: "The court shall have full power and authority to maintain its jurisdiction and by all suitable orders and writs to enforce its decrees in respect to the subject matter of the suit, and to so shape and mould its decrees as to accomplish the purpose of the bill; and all the rules of evidence, practice and procedure, except as otherwise herein provided, that pertain to courts of equity generally, or that exist by virtue of any law of this state, may be invoked and applied in any such injunction proceeding instituted hereunder."

No question is here argued as to the sufficiency of the bill to invoke the jurisdiction of the court to abate the alleged nuisance.

All assignments of error are made jointly by the appellants, and to be availing for a reversal of the cause the error or errors must be alike injurious to both appellants. Hammock et al. v. Oakley, 228 Ala. 588, 154 So. 906; Bank of Cotton-

wood et al. v. Hood, 227 Ala. 237, 149 So. 676.

The evidence in the case was given ore tenus before the court.

Upon final submission the court granted the relief prayed, and perpetually enjoined the respondents, separately and severally, "from the unlawful sale, offering for sale, keeping for sale, or possessing upon the premises described in the bill of complaint prohibited liquors and beverages as defined and provided by the laws of the State of Alabama," and from "permitting liquors to be sold or drunk on said premises." The decree further required the respondents to make and execute bond in the sum of $750, payable to the state of Alabama, conditioned upon the strict observance of the decree, and in the event the bond was not given the sheriff was ordered and directed to take charge of the property described in the decree and "padlock the same."

From this decree the appeal is prosecuted by both respondents.

The evidence was without conflict as to the joint ownership of the property by the respondents, husband and wife, and that it consisted of an acre of land near Goodwater, in Coosa county, on the west side of a public road; that upon this land there was a building, with five rooms; the room to the front "constituted a store and eating joint"; that some 75 to 100 feet from the main building are two "small houses built upon posts or trees several feet off the ground, which are connected with the main building by plank gang ways."

There was ample evidence in the case to support the finding that this place was used for the purpose of selling and storing prohibited liquors throughout the entire year 1934. The evidence not only warranted a finding that while the respondents were operating this place, during 1934, liquor was sold by them, through their servants and employees, in and about the building, but also to show that this illegal liquor traffic continued there during the time the property was under a lease or rental contract to others, if it was ever in fact under such lease or rental contract, and that this illegal use of the property was with the *knowledge, assent,* and *connivance* of the defendants, one or both.

If the tenants were guilty of maintaining the liquor nuisance on the rented premises to the knowledge, and with the assent and acquiescence, of the landlords, which the court, under the evidence, was warranted in finding, the injunction was properly granted against them. Code, § 4675; Grossman v. United States (C.C.A.) 280 F. 683; State v. Massey, 72 Vt. 210, 47 A. 834, 837; State ex rel. Lyon, Attorney General, v. New Charleston Hotel Co., 80 S.C. 120, 61 S.E. 207; Bell v. Glascker, 82 Iowa, 736, 47 N.W. 1042; State of Kansas v. Glass, 99 Kan. 159, 160 P. 1145; Commonwealth v. Hughes, 165 Mass. 7, 42 N.E. 121; State v. Stafford, 67 Me. 125; 33 Corpus Juris, § 405, p. 696.

It is insisted by the appellants that the court committed reversible error in permitting the state to prove by the witness Henry Brooks that he purchased and drank whisky at the respondents' place on several occasions during the year 1934; also in permitting the witness Claude Culbertson to testify that he purchased whisky at said place during the year 1934 from a man named Pop Eye; and in permitting similar evidence from the witnesses Bohannon and C. S. Levy. The testimony was all admissible as tending to show that prohibited liquors were sold at the place, and also as having a tendency to show, from frequency of the purchases, that the respondents had knowledge that the property was being used for illegal purposes.

It is also insisted that the court committed error "in permitting the State to prove by the witness L. D. Crew that he found whisky west of the road on one occasion when Mrs. Joiner was at the store." The testimony of this witness shows in this connection that the whisky was found just across the road from respondents' place, and within thirty yards of the place, and that there was no other person living within a quarter of a mile of this store. This testimony, taken and considered in connection with the statements made at the time by Mrs. Joiner to Crew, was clearly competent. However, whether so or not, it fully appears that the court later on during the examination of this witness took the position that the testimony was inadmissible, thus negativing the idea that he gave any consideration to this part of the testimony of said witness.

There was abundant evidence to support the decree, and the decree will not be reversed for the admission of irrelevant,

immaterial, or incompetent testimony, if in fact any such evidence was admitted.

The fact that, as evidence is being given ore tenus, the court overrules a party's objection, is not, standing alone, sufficient to show that the court, on its final consideration of the case, allowed the objected to testimony, if irrelevant, immaterial, or incompetent, to exert any influence upon his determination of the issue.

Section 6565 of the Code makes it the duty of the court in the consideration of equity cases to "consider only such testimony as is relevant, material and competent, and shall exclude and not consider any testimony which is irrelevant, immaterial or incompetent, whether objection shall have been made thereto or not," and this same statutory duty rests upon this court in reviewing appeals in equity cases.

What was said in this connection by the late Justice Sayre in the case of Woody v. Tucker, Willingham & Co., 215 Ala. 278, 110 So. 465, 467, is here pertinent:

"We take it that, on hearing the testimony ore tenus, the court may expedite the cause and save the parties costs by refusing to hear testimony patently irrelevant, immaterial, or incompetent; but, if error is committed in this respect and it appears that thereby testimony is excluded from the record which this court, on appeal, finds may have been material to a correct decision, a reversal will be ordered. Such was the judgment in Montgomery v. McNutt, 214 Ala. 692, 108 So. 752, recently decided.

"It would seem to follow that the answer to a question calling for anything like a fact of doubtful admissibility should be admitted to the record for future consideration by the trial court and by this court in the event of an appeal."

It only remains to be said that we have carefully considered the evidence in this case, and are convinced that the trial court committed no error in its decree, and we may add that, in our opinion, the court could have reached no other conclusion.

It follows, therefore, that the decree appealed from is due to be, and is, affirmed.

Affirmed.

ANDERSON, C.J., and THOMAS and BROWN, JJ., concur.